

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 APR 25 PM 4: 15
APR 2 6 2001
LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ALFRED ALEXANDRA, INA VEDROS GUNTER AND LOUIS SEITHER | * * * | **01-1278** |
| VERSUS | * * | |
| WARNER-LAMBERT COMPANY, PARKE-DAVIS & COMPANY, PFIZER, INC., YVETTE AUCOIN, COLLINS J. REYNOLDS, IV, CARLA M. LUKE, EARL GAMBLE, KRISTIN MARSIGLIA, JIM SANDOZ, STEPHANIE KLEEHAMMER, WALGREEN LOUISIANA COMPANY, INC. D.B.A. WALGREEN'S PHARMACY AND RITEAID PHARMACY, FORMERLY KNOWN AS K&B DRUG, INC., MAJORIA DRUGS, AND RAGUSA SUPERMARKET, INC. | * * * * * * * * * * * * * | CIVIL ACTION **SECT. L MAG 2** JUDGE MAGISTRATE JUDGE |

**************************************

## NOTICE OF REMOVAL

**TO:  THE JUDGES OF THE UNITED STATES DISTRICT COURT,
      EASTERN DISTRICT OF LOUISIANA**

Pursuant to 28 U.S.C. § 1446, defendants, Pfizer, Inc. (hereinafter "Pfizer"), Warner-Lambert

Company (hereinafter "Warner-Lambert") and Parke-Davis, (incorrectly named as "Parke-Davis &



Fee 150.00
Process
X Dktd
CtRmDep
Doc.No.

Company"), with full reservation of any and all defenses, objections and exceptions, provide Notice of Removal of this civil action to the United States District Court for the Eastern District of Louisiana and respectfully represent that:

1.

On or about March 21, 2001, plaintiffs commenced an action against defendants in the Twenty-Fourth Judicial District Court for the Parish of Jefferson, State of Louisiana, entitled "*Alfred Alexandra, et al. v. Warner-Lambert Company, Parke-Davis & Company, Pfizer Inc., Yvette Aucoin, Collins J. Reynolds, IV, Carla M. Luke, Earl Gamble, Kristin Marsiglia, Jim Sandoz, Stephanie Kleehammer, Walgreen Louisiana Company, Inc. d.b.a. Walgreen's Pharmacy and Riteaid Pharmacy, formerly known as K&B Drug, Inc.,Majoria Drugs, and Ragusa Supermarket, Inc.,*" No. 565-144 on the docket of said court.

2.

Service of process was made on Pfizer through its agent for service of process, CT Corporation System, on April 5, 2001. A copy of the Citation and the original Petition for Damages served upon Pfizer is attached to this Notice of Removal pursuant to 28 U.S.C. § 1446(a) as Exhibit "A," *in globo*.

3.

As will be shown more fully below, this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a), as the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00, and there is complete diversity of citizenship between plaintiffs and the only properly joined defendants, Pfizer, Warner-Lambert and Parke-Davis. Thus, this action may be removed to

this Court by defendants pursuant to the provisions of 28 U.S.C. § 1441.

4.

Named plaintiffs all are, and were at the time the state court action was commenced, citizens of the State of Louisiana.

5.

Defendant Pfizer is, and was at the time the action was commenced, a Delaware corporation with its principal place of business in the State of New York.

6.

Defendant Warner-Lambert is, and was at the time the action was commenced, a Delaware corporation with its principal place of business in the State of New Jersey. Parke-Davis is an unincorporated division of Warner-Lambert and is not a separate corporation or other legal entity.

7.

This products liability action involves the prescription drug Rezulin®, which was manufactured, distributed and sold by Warner-Lambert through its unincorporated Parke-Davis division. The drug was prescribed for the treatment of adult onset or type 2 diabetes.

8.

This case is one of many cases pending throughout the country concerning Rezulin®. On June 9, 2000, the Judicial Panel for Multi-District Litigation (the "Panel") issued an Order establishing a Multi-District Litigation for all Rezulin® lawsuits pending in federal courts ("MDL-1348"). MDL-1348 has been assigned to the Honorable Lewis A. Kaplan in the Southern District

of New York.[1]  Pursuant to its obligation under Rule 7.5(e) of the Panel's Rules of Procedure, Warner-Lambert is contemporaneously with the filing of this Notice of Removal notifying the Panel that this action is a "tag along" case that should be transferred to MDL-1348.

9.

Plaintiffs have fraudulently joined Walgreen Louisiana Company, Inc. d/b/a Walgreen's Pharmacy, RiteAid Pharmacy, formerly known as K&B Drug, Inc., Majoria Drugs, and Ragusa Supermarket, Inc. (hereinafter collectively "pharmacy defendants") and Yvette Aucoin, Collins J. Reynolds, IV, Carla M. Luke, Earl Gamble, Kristin K. Marsiglia, Jim J. Sandoz and Stephanie Kleehammer (hereinafter collectively "territory managers") as co-defendants for the sole purpose of destroying diversity and preventing removal of this case to this Court.

10.

There is no reasonable basis to predict that plaintiffs can establish liability against the pharmacy defendants because no duty exists under the law of the State of Louisiana and under the provisions of the Learned Intermediary Doctrine which would require a druggist or pharmacist to advise or warn consumers of the possible adverse effects of a particular drug.  *See In re: Rezulin Products Liability Litigation*, 2001 WL 199406 (S.D.N.Y. Mar. 1, 2001) at * 11; *Timm v. Upjohn Co.*, 624 F.2d 536 (5th Cir. 1980), *cert. denied*, 449 U.S. 1112, 101 S. Ct. 921 (1981); *Strickland v. Brown Morris Pharmacy, Inc.*, 1996 WL 537736 (E.D. La. Sept. 20, 1996); *Gassen v. East Jefferson General Hospital*, 628 So.2d 256 (La. App. 5th Cir. 1993); *Kinney v. Hutchinson*, 449 So.2d 696

---

[1]  A copy of the Order of consolidation is attached to this Notice of Removal as Exhibit "B."

(La. App. 5th Cir. 1984); and *Cobb v. Syntex Laboratories, Inc.*, 444 So.2d 203 (La. App. 1st Cir. 1983). Plaintiffs' allegations against the pharmacy defendants further fail to allege and there is no reasonable basis to predict that they can establish that the pharmacy defendants had knowledge of the alleged dangers of Rezulin® or that their alleged negligence proximately caused plaintiffs' alleged injuries. In addition, any claim for breach of implied warranty must fail because plaintiffs have failed to allege and there is no reasonable basis to predict that they can establish that any representations by the pharmacy defendants constituted part of the "basis of the bargain." *See In re: Rezulin Products Liability Litigation*, 2001 WL 199406 (S.D.N.Y. Mar. 1, 2001) at * 8. Therefore, plaintiffs do not have, and cannot have, any cause of action against the pharmacy defendants, and they were not joined in this suit in good faith but rather for the sole purpose of preventing removal of this action to this Court.

10.

Plaintiffs have also fraudulently joined as the territory managers, each citizens of the State of Louisiana, for the sole purpose of attempting to defeat diversity and prevent removal of this action to this Court. Plaintiffs have wholly failed to show any basis for a claim for relief or right of recovery against the territory managers.

11.

Louisiana law does not impose a duty upon pharmaceutical representatives to warn of the characteristics of the prescription drugs they detail. Plaintiffs do not allege and cannot show sufficient facts to establish a breach of a duty personally owed to plaintiff by a territory manager which proximately caused any plaintiff harm. Plaintiffs have further not pled the circumstances

5

surrounding any alleged "fraud and misrepresentation" with sufficient particularity. Territory managers cannot be held liable merely for the discharge of their general administrative functions on their employer's behalf. *In Re: Rezulin products Liability Litigation,* 2001 WL 199406 *2-3 (S.D.N.Y.); *Shelby v. Mayeux,* 1994 WL 10191 *1 (E.D. La.); *Campbell v. Galloway*, 1991 WL 81702 *3 (E.D. La.); and *Wallace v. Upjohn Co.,* 535 So.2d 1110, 1117 (La. App. 1 Cir.) *writ denied*, 539 So.2d 630 (La. 1989). Finally, because the territory managers are not sellers of Rezulin®, they cannot be held liable for breach of any implied warranty. La.-C.C. art. 2520; *In Re: Rezulin Products Liability Litigation*, 2001 WL 199406 *3-4.

12.

The right to remove a diversity action cannot be defeated by the fraudulent joinder of a resident defendant against whom there is no reasonable basis to predict that a claim could be stated under state law. *Chesapeake and Ohio Ry. v. Cockrell,* 232 U.S. 146, 152, 34 S. Ct. 278, 280, 58 L.Ed. 544 (1914); *Burden v. General Dynamics Corp.*, 60 F.2d 213, 216 (5th Cir. 1995). As such, the citizenship of the pharmacy defendants and territory managers must be ignored for the purposes of diversity jurisdiction. *Burden*, 60 F.2d at 218. Further, because the pharmacy defendants and territory managers have been fraudulently joined, their consent need not be obtained for removal to federal court. *Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir. 1993), *cert. denied*, 510 U.S. 868 (1993).

14.

It is facially apparent that the amount in controversy exceeds $75,000, exclusive of interest and costs. The Petition alleges that the drug Rezulin® causes "liver failure," "liver toxicity" and

6

"severe and life threatening complications and side effects."[2] Plaintiffs seek damages for "serious and permanent injuries including, but not limited to, injuries to the liver," and a) disability; b) disfigurement, c) mental anguish, d) loss of capacity for the enjoyment of life, e) expense of hospitalization, f) medical and nursing care and treatment, g) loss of earnings and h) loss of the ability to earn money in the future.[3] The preponderance of the evidence is that the amount in controversy exceeds $75,000. *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999) ($75,000 jurisdictional minimum was facially apparent from the allegations of the complaint where plaintiff alleged that after the defendant lost plaintiff's heart medication, plaintiff became ill, suffered pain and humiliation, experienced a temporary inability to do housework and incurred unspecified ambulance expenses, hospitalization expenses, property damage and travel expenses).

15.

This Notice of Removal is being filed within thirty days of service of the Petition for Damages and is timely under 28 U.S.C. § 1446 (b).

16.

Defendants will promptly serve written notice of the filing of this Notice of Removal with the Clerk of Court for the Twenty-Fourth Judicial District Court for the Parish of Jefferson, State of Louisiana.

WHEREFORE, defendants, Pfizer, Warner-Lambert and Parke-Davis pray that the above numbered and entitled cause on the docket of the Twenty-Fourth Judicial District Court for the

---

[2] Petition for Damages, ¶¶36, 37.

[3] Petition for Damages, ¶70.

Parish of Jefferson, State of Louisiana, be removed from that court to the docket of the United States

District Court for the Eastern District of Louisiana.

Respectfully submitted,

IRWIN FRITCHIE URQUHART & MOORE LLC

_____

QUENTIN F. URQUHART, JR. (Bar No. 14475)
DAVID W. O'QUINN (Bar. No. 18366)
JOHN W. SINNOTT (Bar No. 23943)
400 Poydras Street
Suite 2700
New Orleans, Louisiana 70130
Telephone: (504) 310-2100
Facsimile:  (504) 310-2101

Counsel for defendants, Pfizer, Inc., Warner-Lambert Company and Parke-Davis

8

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served upon counsel for all parties to this proceeding by mailing a copy of same to each by First Class United States mail, properly addressed and postage prepaid, on this _16th_ day of April, 2001.

H.\REZULIN\Gauthier cases\Alexandra, Alfred wpd



**DIV. C**
JUDGE
ALAN J. GREEN

(101) Citation: PETITION FOR DAMAGES;                    010323-4662-7

## 24TH JUDICIAL DISTRICT COURT
## PARISH OF JEFFERSON
## STATE OF LOUISIANA

ALFRED ALEXANDRA, INA VEDROS GUNTER AND
LOUIS SEITHER
  versus
WARNER-LAMBERT COMPANY, PARKE-DAVIS &
COMPANY, PFIZER INC., YVETTE AUCOIN, COLLINS J.          Case: 565-144    Div: "C"
REYNOLDS, IV, CARLA M. LUKE, EARL GAMBLE,                P 1 ALFRED ALEXANDRA
KRISTIN MARSIGLIA, JIM SANDOZ, STEPHANIE
KLEEHAMMER, WALGREEN LOUISIANA COMPANY, INC.
D.B.A WALGREEN'S PHARMACY AND RITEAID
PHARMACY, FORMERLY KNOWN AS K&B DRUG, INC.,
MAJORIA DRUGS, AND RAGUSA SUPERMARKET, INC.

To: PFIZER INC
THRU ITS REGISTERED AGENT: CT CORPORATION
SYSTEM                                                   CK# 16291
8550 UNITED PLAZA BLVD.                                  $72.32
BATON ROUGE LA  70809

PARISH OF JEFFERSON

You are hereby summoned to comply with the demand contained in the **PETITION FOR DAMAGES**
of which a true and correct copy accompanies this citation, or make an appearance either by filing a
pleading or otherwise, in the 24th Judicial District Court in and for the Parish of Jefferson, State of
Louisiana, within **FIFTEEN CALENDAR** days after the service hereof, under penalty of default.

This service was requested by attorney DEBORAH M. SULZER and was issued by the Clerk Of
Court on the 23rd day of March, 2001.

_Simone Guillot_

Simone M Guillot, Deputy Clerk of Court for
Jon A. Gegenheimer, Clerk Of Court

(101) Citation: PETITION FOR DAMAGES;                    010323-4662-7

## SERVICE INFORMATION

Received on the _____ day of _____, _____ and on the _____ day of
_____, _____ served the above named party as follows:

PERSONAL SERVICE on the party herein named _____.

DOMICILIARY SERVICE on the party herein named by leaving the same at his domicile in this parish
in the hands of _____, a person of suitable age and discretion
residing in said domicile and whose name and other facts connected with this service, I learned by
interrogating the said person, said party herein being absent from his residence at the time of said
service.

RETURNED: Parish of _____ this _____ day of _____, _____.

SERVICE: $ _____     BY: _____
MILEAGE: $ _____         Deputy Sheriff
TOTAL: $ _____



**EXHIBIT**
_A_

24th JUDICIAL DISTRICT COURT FOR THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NUMBER: 565-144                    DIVISION: _____





DIV. C
JUDGE
ALAN J GREEN

ALFRED ALEXANDRA,
INA VEDROS GUNTER and
LOUIS SEITHER
Plaintiffs

VERSUS

WARNER-LAMBERT COMPANY,
PARKE-DAVIS & COMPANY,
PFIZER INC.,
YVETTE AUCOIN,
COLLINS J. REYNOLDS, IV,
CARLA M. LUKE,
EARL GAMBLE,
KRISTIN MARSIGLIA,
JIM SANDOZ,
STEPHANIE KLEEHAMMER,
WALGREEN LOUISIANA COMPANY,
INC. d/b/a Walgreen's Pharmacy and
RITEAID PHARMACY, formerly
known as K&B Drug, Inc.,
MAJORIA DRUGS, and
RAGUSA SUPERMARKET, INC.
Defendants



DSS HAS
RECORDS



FILED: _____        DEPUTY CLERK: _____

PETITION FOR DAMAGES

The Petition of ALFRED ALEXANDRA, INA VEDROS GUNTER and LOUIS

SEITHER, persons of full age of majority, domiciled in the Parish of Jefferson, State of

Louisiana, respectfully represent as follows:

**PARTIES**

1.   At all times material to this action, Plaintiffs were residents of Jefferson Parish,

Louisiana.  Plaintiffs suffered from adult-onset diabetes, also known as Type 2

diabetes.  Plaintiffs ingested the drug Rezulin from approximately 1997 through

1999.

2.   Defendant, *Warner-Lambert Company* ("Warner-Lambert"), is a Delaware

Corporation with its principal place of business at 201 Tabor Road, Morris Plains,

New Jersey.  At all times relevant hereto, Warner-Lambert was engaged in the

hereto, Walgreen Louisiana Company, Inc. was a licensed pharmaceutical
distributor of drugs, including Rezulin (troglitazone), within the State of Louisiana,
and distributed said drug to your plaintiff, Maria Callis. This Defendant maintains
a principal business establishment in the State of Louisiana and service of
process may be had upon its registered agent, Prentice Hall Corporation
Systems, Inc., 701 South Peter Street, 2nd Floor, New Orleans, Louisiana 70130.

6.    **RITEAID PHARMACY**, ("Rite Aid Pharmacy") *formerly known as K&B Drug,*
*Inc.*, is a corporation licensed and doing business within the State of Louisiana.
Rite Aid Pharmacy, at all times material hereto,  was in the business of
marketing, promoting, selling and/or distributing the pharmaceutical drug Rezulin
(troglitazone) in the State of Louisiana, for monetary profit.  At all times material
hereto, Rite Aid Pharmacy was a licensed pharmaceutical distributor of drugs,
including Rezulin (troglitazone), within the State of Louisiana, and distributed
said drug to your plaintiff, Michael Farrell.   This Defendant maintains a principal
business establishment in the State of Louisiana and service of process may be
had upon its registered agent, CT Corporation System, 8550 United Plaza
Boulevard, Baton Rouge, Louisiana 70805.

7.    **MAJORIA DRUGS**, is a corporation licensed and doing business within the State
of Louisiana.  Majoria Drugs, at all times material hereto, was in the business of
marketing, promoting, selling and/or distributing the pharmaceutical drug Rezulin
(troglitazone) in the State of Louisiana, for monetary profit.  At all times, material
hereto, Majoria Drugs was a licensed pharmaceutical distributor of drugs,
including Rezulin (troglitazone), within the State of Louisiana, and distributed
said drug to plaintiff, Ina Vedros Gunter.  This Defendant maintains a principal
business establishment in the State of Louisiana and service of process may be
upon its registered agent, *Anthony S. Majoria, 7 Lakeway Court, New*
*Orleans, Louisiana 70131.*

8.    **RAGUSA SUPERMARKET, INC.**, is a corporation licensed and doing business
within the State of Louisiana, at all times material hereto, was in the business of
marketing, promoting, selling and/or distributing the pharmaceutical drug Rezulin

(troglitazone) in the State of Louisiana, for monetary profit. At all times, material hereto, Ragusa Food Store, operating under Ragusa Supermarket, Inc., was a licensed pharmaceutical distributor of drugs, including Rezulin (troglitazone), within the State of Louisiana, and distributed said drug to plaintiff, Alfred Alexandra. This Defendant maintains a principal business establishment in the State of Louisiana and service of process may be upon its registered agent, *Larry C. Pieno, 4007 Westbank Expressway, Marrero, Louisiana 70072 and Carl J. Burreri, 2608 Crestwood Road, Marrero, Louisiana 70072.*

9.    *YVETTE AUCOIN* is a resident of Gretna, Jefferson Parish, Louisiana. At all times material hereto, this Defendant was in the business of promoting, marketing, selling, and/or distributing the drug known as Rezulin (and/or Troglitazone), individually and/or in combination with one or more other defendants named herein, in the State of Louisiana, and at all times material hereto, this Defendant does and did business in the State of Louisiana and sold the aforementioned drugs in the State of Louisiana.

10.   *COLLINS J. REYNOLDS, IV* is a resident of Kenner, Jefferson Parish, Louisiana. At all times material hereto, this Defendant was in the business of promoting, marketing, selling, and/or distributing the drug known as Rezulin (and/or Troglitazone), individually and/or in combination with one or more other defendants named herein, in the State of Louisiana, and at all times material hereto, this Defendant does and did business in the State of Louisiana and sold the aforementioned drugs in the State of Louisiana.

11.   *CARLA M. LUKE* is a resident of New Orleans, Orleans Parish, Louisiana. At all times material hereto, this Defendant was in the business of promoting, marketing, selling, and/or distributing the drug known as Rezulin (and/or Troglitazone), individually and/or in combination with one or more other defendants named herein, in the State of Louisiana, and at all times material hereto, this Defendant does and did business in the State of Louisiana and sold the aforementioned drugs in the State of Louisiana.

13.   *EARL GAMBLE* is a resident of New Orleans, Orleans Parish, Louisiana. At all

times material hereto, this Defendant was in the business of promoting, marketing, selling, and/or distributing the drug known as Rezulin (and/or Troglitazone), individually and/or in combination with one or more other defendants named herein, in the State of Louisiana, and at all times material hereto, this Defendant does and did business in the State of Louisiana and sold the aforementioned drugs in the State of Louisiana.

14.   *KRISTIN K. MARSIGLIA* is a resident of New Orleans, Orleans Parish, Louisiana. At all times material hereto, this Defendant was in the business of promoting, marketing, selling, and/or distributing the drug known as Rezulin (and/or Troglitazone), individually and/or in combination with one or more other defendants named herein, in the State of Louisiana, and at all times material hereto, this Defendant does and did business in the State of Louisiana and sold the aforementioned drugs in the State of Louisiana.

15.   **JIM J. SANDOZ** is a resident of New Orleans, Orleans Parish, Louisiana. At all times material hereto, this Defendant was in the business of promoting, marketing, selling, and/or distributing the drug known as Rezulin (and/or Troglitazone), individually and/or in combination with one or more other defendants named herein, in the State of Louisiana, and at all times material hereto, this Defendant does and did business in the State of Louisiana and sold the aforementioned drugs in the State of Louisiana.

16.   **STEPHANIE KLEEHAMMER** is a resident of New Orleans, Orleans Parish, Louisiana. At all times material hereto, this Defendant was in the business of promoting, marketing, selling, and/or distributing the drug known as Rezulin (and/or Troglitazone), individually and/or in combination with one or more other defendants named herein, in the State of Louisiana, and at all times material hereto, this Defendant does and did business in the State of Louisiana and sold the aforementioned drugs in the State of Louisiana.

17.   As used herein, "Sales Representative Defendants" refers collectively to Defendants, YVETTE AUCOIN, COLLINS J. REYNOLDS, IV, CARLA M. LUKE, EARL GAMBLE, KRISTIN MARSIGLIA, JIM SANDOZ and STEPHANIE

KLEEHAMMER.

18.  Venue is proper in this Court pursuant to Louisiana Code of Civil Procedure, Articles 42, 73 and 74.

## BACKGROUND

19.  This is an action for damages suffered by Plaintiffs as a direct and proximate result of Defendants' wrongful conduct in connection with the manufacturing, distribution, labeling, and selling the prescription drug Rezulin (troglitazone).

20.  At all relevant times, Defendants manufactured, designed, tested, packaged, supplied, marketed, sold, advertised, and otherwise distributed the drug troglitazone under the brand name Rezulin (troglitazone).

21.  On July 31, 1996, Warner-Lambert filed a new drug application for Rezulin (troglitazone) with the United States Food and Drug Administration ("FDA").  At the time the Company submitted the application, however, Rezulin (troglitazone) had already been selected as one of two drugs to be tested in a six-year, $150 million federally-funded clinical study to be conducted by the National Institute of Health (the "NIH").  The stated purpose of the study was to examine ways to prevent or delay the onset of Type 2 diabetes.

22.  Heading up the NIH's Rezulin (troglitazone) study was Dr. Richard C. Eastman, Director of the NIH's Division of Diabetes, Endocrinology, and Metabolic Diseases.  Upon information and belief, Dr. Eastman served as a paid consultant to Warner-Lambert at the same time he was charged with overseeing the NIH study.  Over a two-year period, Warner-Lambert and its affiliates paid Eastman more than $78,455 in compensation.  Eastman's relationship with Warner-Lambert was first exposed in December 1998.  Others within the NIH received similar remuneration or grants from Warner-Lambert.  At least 12 of the 22 scientists in charge of the selection and administration of the NIH's Rezulin (troglitazone) testing program received funding or compensation from Warner-Lambert.  The research firm of one of the scientists who had promoted the drug and assisted in leading the government study was awarded funding that could

total $50 million. Indeed, as identified by The Los Angeles Times:

> The scientists played two different — and potentially incompatible — roles: As the government's "principal investigators," they judged the worthiness of Rezulin in a diabetes-prevention study conducted by the NIH. As researchers or consultants whose efforts were financed by Warner-Lambert, they were part of the drug maker's drive to win quick acceptance of Rezulin as a front-line diabetes treatment.

23.    Having gained the blessing of the NIH, Rezulin (troglitazone)'s review before the FDA was expedited. Dr. John L. Gueriguian, M.D. was selected by the FDA to oversee the six-month, "fast-track" review.

24.    In the fall of 1996, Dr. Gueriguian recommended against Rezulin (troglitazone)'s approval, citing numerous concerns about liver toxicity. Shortly thereafter, Warner-Lambert complained to Dr. Gueriguian's FDA superiors, which resulted in the removal of Dr. Gueriguian from the Rezulin (troglitazone) review process.

25.    In January 1997, after the FDA's Endocrinologic and Metabolic Drugs Advisory Committee voted eight to zero to recommend approval without requiring any warnings regarding liver toxicity, the FDA approved the marketing and sale of Rezulin (troglitazone) only for individuals currently on insulin or other diabetes medications.

26.    Upon information and belief, the members of the Advisory Committee had never been told of Dr. Gueriguian's opposition to Rezulin (troglitazone)'s approval, nor had they been told that eleven members of the NIH study had been taken off Rezulin (troglitazone) due to dangerously high levels of liver toxicity. Consequently, they voted for approval without requiring liver-function monitoring.

27.    Twenty-one patients treated with Rezulin (troglitazone) as part of Warner-

Lambert's clinical trials, conducted before Rezulin (troglitazone) was approved, had to stop taking Rezulin (troglitazone) because of serious liver injury. Thirteen of these patients had liver enzyme levels 10-30 times higher than normal, 3 patients contracted hepatitis, and 2 patients had jaundice. None of the 475 patients in the control group had comparable liver injuries. Upon information and belief, Warner-Lambert misrepresented or concealed these results from the FDA.

28.    On January 30, 1997, Warner-Lambert issued a press release trumpeting the approval of the drug and promoting its efficacy and novelty. The Company's statements that Rezulin (troglitazone) "is the first anti-diabetes drug designed to target insulin resistance" and that "Rezulin is the first drug to work at the cellular level to improve insulin resistance directly — enhancing the effects of circulating insulin...Until now, other therapies lowered blood glucose by increasing insulin production or decreasing hepatic glucose output" were false and misleading. In fact, the FDA informed Warner-Lambert that these claims were false and demanded that the Company immediately discontinue circulating the press release and refrain from any other dissemination of such claims.

29.    Similarly, in full-page magazine advertisements Warner-Lambert falsely claimed that Rezulin (troglitazone) was virtually free of side effects or was "comparable to placebo." In fact, as later reported by The Los Angeles Times, "Warner-Lambert's own research had indicated that Rezulin (troglitazone) users were nearly four times more likely to experience some degree of liver injury than patients taking the placebos." This false advertisement — as well as Warner-Lambert's other false statements — was intended to conceal the known dangers associated with Rezulin (troglitazone), and increase interest in and sales of Rezulin (troglitazone).

30.    On August 4, 1997, the FDA expanded its approval of Rezulin (troglitazone) by permitting its use as a monotherapy that no longer needed

to be taken in conjunction with other diabetes medications.

31.    In October 1997, the FDA began receiving adverse event reports of serious liver injuries in patients taking Rezulin (troglitazone).  Specifically, Warner-Lambert executives informed Dr. Robert Misbin, a senior medical officer at the FDA, that certain Rezulin (troglitazone) patients had suffered liver failure.  Upon his review of Warner-Lambert's original research, Dr. Misbin concluded that Rezulin (troglitazone) could cause liver failure.

32.    On November 3, 1997, after acknowledging 35 post-marketing reports of liver injuries including one liver transplant and one death, Warner-Lambert announced the first of what would ultimately be four FDA-required changes to the safety label accompanying Rezulin (troglitazone).

33.    On December 1, 1997, Glaxo-Wellcome, the distributor of Rezulin (troglitazone) in the United Kingdom, withdrew Rezulin (troglitazone) from the market after the British Medicines Agency reported that the risks of Rezulin (troglitazone) outweighed any benefits.  On the same day, the second change to Rezulin (troglitazone)'s warnings was announced.

34.    On May 17, 1998, Audrey Jones, a healthy, 55-year-old female participant in the NIH study, died from sudden liver failure as a result of taking Rezulin (troglitazone) for seven months.  Despite that she had been carefully monitored as recommended by Warner-Lambert's revised safety labels, she required a liver transplant and died shortly thereafter.  As a result of Ms. Jones's death, the NIH dropped Rezulin (troglitazone) from its study on June 4, 1998.

35.    The following day, Warner-Lambert issued a press release falsely stating that Ms. Jones had apparently died "due to complications unrelated to the study or [Rezulin]," thus misrepresenting to the public and medical community that Rezulin (troglitazone) was not the cause of the liver failure.

36.    Following the death of Ms. Jones and the withdrawal of Rezulin

(troglitazone) from the NIH study, the FDA advised Warner-Lambert to revise Rezulin (troglitazone)'s labeling a third time. Nonetheless, despite reports of thirty-three Rezulin (troglitazone)-related liver failure deaths in the United States and Japan by December 1998, Warner-Lambert continued to represent that Rezulin (troglitazone) was safe and that its benefits outweighed its risks. These representations were false when made.

37.    On December 27, 1998, Stephen Mock, a Warner-Lambert Vice President and spokesman, told the Los Angeles Times that there had been no reports of death or liver transplants with Rezulin (troglitazone) since the July 1998 labeling change. This statement was knowingly false when made. The number of reported deaths did not drop after the July 1998 labeling change; out of the 2,791 adverse reaction reports filed between March 27, 1997 and February 9, 1999, 55 deaths were reported before July 1998 and 57 deaths were reported after.

38.    On March 26, 1999, a second FDA Advisory Committee voted to withdraw approval of Rezulin (troglitazone) as a monotherapy, but permitted the continuation of its use in conjunction with insulin and other diabetes medications. At the Advisory Committee meeting, a senior FDA epidemiologist reported that the FDA had connected Rezulin (troglitazone) to forty-three reported cases of liver failure — a life threatening condition — and that Rezulin (troglitazone) could be expected to cause liver failure in one out of every 1,800 patients.

39.    On June 16, 1999, the FDA recommended that Rezulin (troglitazone) no longer be used as an initial therapy for treating diabetes. On the same day, Rezulin (troglitazone)'s warnings were revised for the fourth time.

40.    On February 24, 2000, despite reports of increasing deaths due to liver failure among Rezulin (troglitazone) users, Warner-Lambert, once again, issued a press release falsely stating that "there [had] been no reported

deaths or transplants possibly or probably associated with Rezulin
(troglitazone) among patients in the U.S. starting the therapy after the most
recent label revision in June 1999." However, the following day a
spokesperson for the FDA stated that the FDA had received reports of six
cases of Rezulin (troglitazone)-related liver failure since July 1999. Of
those six cases, three individuals had died.

41.    On March 1, 2000, a former Warner-Lambert researcher and doctor who
had participated in two clinical studies of Rezulin (troglitazone), wrote to
Senator Edward Kennedy expressing her concerns that Warner-Lambert
had put "profits before the lives of patients with diabetes." Specifically, the
doctor stated that Warner-Lambert "deliberately omitted reports of liver
toxicity and misrepresented serious adverse events experienced by
patients in their clinical studies."

42.    Upon information and belief, by March 10, 2000, the FDA had connected
Rezulin (troglitazone) to 89 cases of liver failure, including 61 deaths.

43.    On March 22, 2000, Warner-Lambert withdrew Rezulin (troglitazone) from
the U.S. market pursuant to the FDA's request.

44.    Warner-Lambert earned an estimated $1.8 billion from the sale of Rezulin
(troglitazone) in the United States.

### PLAINTIFFS' USE OF REZULIN (troglitazone)

45.    Plaintifs suffered from Type 2 diabetes, and were prescribed and began
ingesting Rezulin (troglitazone) approximately from 1997 through 1999.

46.    Had Defendants properly disclosed the risks associated with using Rezulin
(troglitazone), Plaintiffs would not have taken the drug.

### GENERAL ALLEGATIONS

47.    Defendants Warner-Lambert, Parke Davis, and Pfizer, directly or indirectly,

negligently and/or defectively made, created, manufactured, assembled, designed, sterilized, tested, labeled, supplied, packaged, distributed, marketed, advertised, warned, and/or sold, in the State of Louisiana, the drug Rezulin (troglitazone).

48.    Defendants Warner-Lambert, Parke Davis, and Pfizer had control of the design, assembly, packaging, marketing, advertising, manufacturing, labeling, testing, promoting, distribution and/or sale of the drug Rezulin (troglitazone).

49.    At all times material hereto, Defendants Warner-Lambert, Parke Davis, and Pfizer either knew or should have known that the drug Rezulin (troglitazone) was causally related to and associated with severe and life threatening complications and side effects including, but not limited to, liver toxicity.

50.    Although Defendants Warner-Lambert, Parke Davis, and Pfizer knew or should have known that dangerous risks were associated with the use of Rezulin (troglitazone), Defendants Warner-Lambert, Parke Davis, and Pfizer proceeded to or permitted the drug to be advertised, promoted and/or sold without adequate warnings of the serious side effects and dangerous risks.

51.    Plaintiffs were prescribed and ingested the drug Rezulin (troglitazone) for treatment of a diabetic condition.

52.    The Plaintiff, Alfred Alexandra, purchased the drug Rezulin (troglitazone) at pharmacies located in Jefferson Parish, Louisiana which were owned and operated by the Defendant, Walgreen Louisiana Company, Inc., Rite Aid Pharmacy and Ragusa Supermarket, Inc. At all times pertinent hereto, the defendants, Walgreen Louisiana Company, Inc., Rite Aid Pharmacy and Ragusa Supermarket, Inc., were licensed to provide pharmaceutical drugs in the State of Louisiana to residents of the State of Louisiana.

53.   At all times material hereto, Defendants Walgreen Louisiana Company, Inc., Rite Aid Pharmacy and Ragusa Supermarket, Inc., either knew or should have known that the drug Rezulin (troglitazone) was causally related to and associated with severe and life threatening complications and side effects including but not limited to, liver toxicity. Said Defendants knew of the use for which Rezulin was intended and impliedly warranted Rezulin to be of merchantable quality and safe and fit for its intended use. Contrary to such implied warranty, Rezulin was not of merchantable quality or safe and fit for its intended use, because Rezulin was unreasonably dangerous and unfit for the ordinary purposes for which it was used as described herein.  Defendants, Walgreen Louisiana Company, Inc.; Rite Aid Pharmacy and Ragusa Supermarket, Inc., are liable to plaintiffs under the theories of strict products liability, redhibition, and breach of implied and/or express warranties.

54.   The Plaintiff, Ina Vedros Gunter, purchased the drug Rezulin (troglitazone) at a pharmacy located in Jefferson Parish, Louisiana which was owned and operated by the Defendant, Majoria Drugs.  At all times pertinent hereto, the defendant, Majoria Drugs was licensed to provide pharmaceutical drugs in the State of Louisiana to residents of the State of Louisiana.

55.   At all times material hereto, Defendant, Majoria Drugs, knew or should have known that the drug Rezulin (troglitazone) was causally related to and associated with severe and life threatening complications and side effects including but not limited to, liver toxicity. Said Defendant knew of the use for which Rezulin was intended and impliedly warranted Rezulin to be of merchantable quality and safe and fit for its intended use.  Contrary to such implied warranty, Rezulin was not of merchantable quality nor safe and fit for its intended use, because Rezulin was unreasonably dangerous and unfit for the ordinary purposes for which it was used as described herein. Defendant, Majoria Drugs, is liable to plaintiff under the theories of strict products liability, redhibition, and breach of implied and/or express

warranties.

56.    At all times material hereto, the Sales Representative Defendants, individually and in their corporate capacities, were in the business of marketing promoting, selling and/or distributing the unreasonably dangerous pharmaceutical drugs which have caused harm to the Plaintiff.

57.    Although Sales Representative Defendants, Walgreen Louisiana Company, Inc., Rite Aid Pharmacy, Ragusa Supermarket, Inc. and Majoria Drugs, knew or should have known that dangerous risks were associated with the use of Rezulin (troglitazone), said Defendants proceeded to or permitted the drug to be advertised, promoted and/or sold without adequate warnings of the serious side effects and dangerous risks. These Defendants failed to take immediate and direct measures to insure that the end user of the drug was notified, or that those who specialize in care of diabetic patients were notified, of potential dangers and/or harmful effects associated with its use.

58    At all times material hereto, Defendants Warner-Lambert, Parke Davis, and Pfizer have engaged in the business of selling, distributing, supplying, manufacturing, marketing and promoting the drug Rezulin (troglitazone), which is defective and unreasonably dangerous in construction or composition (LSA-R.S. 9:2800.55) and design (LSA-R.S. 9:2800.56) to consumers, including the Plaintiff.

59.    At all times material hereto, the drug Rezulin (troglitazone) was sold, distributed, supplied, manufactured, marketed and/or promoted by Defendants Warner-Lambert, Parke Davis, and Pfizer, was expected to reach, and did reach, consumers in the State of Louisiana, including the Plaintiffs, without substantial change in the condition in which it was sold.

60.    At all times material hereto, Rezulin (troglitazone) was sold, marketed, distributed, supplied, manufactured and/or promoted by the Defendants

Warner-Lambert, Parke Davis, and Pfizer in a defective and unreasonably dangerous condition at the time it was placed in the stream of commerce.

61. When placed in the stream of commerce, the drug contained unreasonably dangerous design defects and was not reasonably safe as intended to be used, subjecting Plaintiffs to risks which exceeded the benefits of the drug, as follows:

(a) When placed in the stream of commerce, it was defective in design and formulation, making use of the drug more dangerous than an ordinary consumer would expect and more dangerous than other risks associated with obesity and/or weight loss;

(b) The drug was insufficiently tested;

(c) The drug caused harmful side effects which outweighed any potential utility;

(d) the drug was not accompanied by adequate instructions and/or warnings to fully apprize the consumers, including the Plaintiffs, of the full nature or extent of the risks and side effects associated with their use, thereby rendering Defendants Warner-Lambert, Parke Davis, and Pfizer liable to the Plaintiffs, individually and collectively.

63. As a direct and legal result of the defective condition of the drug, Plaintiffs have sustained serious and permanent injuries including, but not limited to, injuries to their livers and other physical injuries; disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, cost of medical monitoring, return of purchase price, loss of earnings and loss of the ability to earn money in the future.

WHEREFORE, Plaintiffs demand judgment against all Defendants for damages, as well as all costs of this action and a trial by jury of all issues to be

tried.

64.    The drug was defective and unreasonably dangerous when it left the possession of the Defendants Warner-Lambert, Parke Davis, and Pfizer, in that it contained warnings insufficient to alert consumers and which were inadequate (LSA-R.S. 9:2800.57), including the Plaintiffs herein, to the dangerous risks and reactions associated with the drug, including, but not limited to, liver toxicity, and other serious and life threatening side effects.

65.    The Plaintiffs used the drug for its intended purposes.

66.    The Plaintiffs could not have discovered any defect in the drug through the exercise of care nor could Plaintiffs' physicians have known of the defective and unreasonably dangerous nature of the product.

67.    Defendants Warner-Lambert, Parke Davis, and Pfizer, as manufacturers of a prescription device, are held to the level of knowledge of an expert in the field.

68.    The warnings that were given by Defendants Warner-Lambert, Parke Davis, and Pfizer, were not accurate, clear, and/or were ambiguous.

69.    Defendants Warner-Lambert, Parke Davis, and Pfizer, had a continuing duty to warn the Plaintiffs of the dangers associated with the use of the drug.

70.    As a direct and legal result of the Defendants', Warner-Lambert, Parke Davis, and  Pfizer failure to warn, Plaintiffs have sustained serious and permanent injuries including, but not limited to, injuries to the liver, and other physical injuries; disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings and loss of the ability to earn money in the future.

71.    Defendants Warner-Lambert, Parke Davis, and Pfizer, directly or indirectly,

negligently and/or defectively made, created, manufactured, assembled, designed, sterilized, tested, labeled, supplied, packaged, distributed, promoted, marketed, advertised, warned, and/or sold, in the State of Louisiana, the drug Rezulin (troglitazone).

72. At all times material hereto, Defendants Warner-Lambert, Parke Davis, and Pfizer, had a duty to Plaintiffs to exercise reasonable care in the design, manufacture, testing, processing, advertising, marketing, testing, labeling, assembling, packaging, distribution, promotion and sale of their respective drug products.

73. Defendants Warner-Lambert, Parke Davis, and Pfizer, breached that duty and were negligent in their actions, misrepresentations, and omissions toward Plaintiffs in the following ways:

1.  Failed to include adequate warnings with the drug that would alert consumers and physicians to the potential risks and serious side affects of the drug;

2.  Failed to adequately and properly test the drug before placing the drug on the market;

3.  Failed to conduct sufficient testing on the drug which, if properly performed, would have shown that the drug had serious side effects, including, but not limited to, liver toxicity;

4.  Failed to adequately warn Plaintiffs that use of the drug carried a risk of temporary or permanent disability due to liver toxicity and other serious side effects;

5.  Failed to warn Plaintiffs that use of the drug carried a risk that liver surgery might become necessary due to damage caused by the drug;

6.  Failed to provide adequate post-marketing warnings or instructions

after the Defendants Warner-Lambert, Parke Davis, and Pfizer,
knew or should have known of the significant risks associated with
the use of the drug;

7.   Encouraged misuse and overuse while underplaying the side effects
to physicians and the public in order to make a profit from sales.

74.   Defendants Warner-Lambert, Parke Davis, Pfizer, Inc., YVETTE AUCOIN,
COLLINS J. REYNOLDS, IV, CARLA M. LUKE, EARL GAMBLE, KRISTIN
MARSIGLIA, JIM SANDOZ and STEPHANIE KLEEHAMMER, knew or
should have known that the drug caused unreasonably dangerous risks
and serious side effects of which the Plaintiffs would not be aware, yet
failed to warn consumers such as Plaintiffs of such serious and
unreasonably dangerous risks and side effects.  Defendants nevertheless
advertised, marketed, sold and distributed the drug knowing that there
were safer methods for the treatment of diabetes.

75.   As a direct and legal result of the negligence of Defendants Warner-
Lambert, Parke Davis, Pfizer, Inc., YVETTE AUCOIN, COLLINS J.
REYNOLDS, IV, CARLA M. LUKE, EARL GAMBLE, KRISTIN MARSIGLIA,
JIM SANDOZ and STEPHANIE KLEEHAMMER, Plaintiffs have sustained
serious and permanent injuries including, but not limited to, injuries to her
liver and other physical injuries; disability, disfigurement, mental anguish,
loss of capacity for the enjoyment of life, expense of hospitalization,
medical and nursing care and treatment, loss of earnings and loss of the
ability to earn money in the future.

76.   The tortious acts by the Sales Representative Defendants, YVETTE
AUCOIN, COLLINS J. REYNOLDS, IV, CARLA M. LUKE, EARL GAMBLE,
KRISTIN MARSIGLIA, JIM SANDOZ and STEPHANIE KLEEHAMMER,
and each of them were committed in their individual and/or corporate
capacity, and include but are not limited to the following:

a.  Sales Representative Defendants failed to convey adequate warnings to the Plaintiffs through the prescribing physicians.

b.  Sales Representative Defendants were in the business of marketing, promoting, selling and/or distributing the unreasonably dangerous pharmaceutical drug Rezulin (troglitazone) which has caused harm to the Plaintiffs.

c.  Sales Representative Defendants negligently distributed, marketed, advertised and/or promoted the dangerous drug Rezulin (troglitazone).

d.  Sales Representative Defendants made negligent misrepresentations regarding the safety and efficiency of the dangerous drug Rezulin (troglitazone).

e.  Sales Representative Defendants negligently failed to provide sufficient instructions to the Plaintiffs and/or their prescribing physicians regarding the use of Rezulin (troglitazone).

80. Defendants Warner-Lambert, Parke Davis, Pfizer, Inc., YVETTE AUCOIN, COLLINS J. REYNOLDS, IV, CARLA M. LUKE, EARL GAMBLE, KRISTIN MARSIGLIA, JIM SANDOZ and STEPHANIE KLEEHAMMER fraudulently, intentionally and/or negligently misrepresented to the Plaintiffs, by and through her prescribing physician, and general public, the safety and effectiveness of the drug and/or fraudulently, intentionally and/or negligently concealed material, adverse information regarding the safety and effectiveness of the drug.

81. Defendants', Warner-Lambert, Parke Davis, Pfizer, Inc., YVETTE AUCOIN, COLLINS J. REYNOLDS, IV, CARLA M. LUKE, EARL GAMBLE, KRISTIN MARSIGLIA, JIM SANDOZ and STEPHANIE KLEEHAMMER, misrepresentations were communicated to the prescribing physician with the intent that they reach the Plaintiffs.

82.    Defendants Warner-Lambert, Parke Davis, Pfizer, Inc., YVETTE AUCOIN, COLLINS J. REYNOLDS, IV, CARLA M. LUKE, EARL GAMBLE, KRISTIN MARSIGLIA, JIM SANDOZ and STEPHANIE KLEEHAMMER, either knew or should have known that the representations were false.

83.    Defendants Warner-Lambert, Parke Davis, Pfizer, Inc., YVETTE AUCOIN, COLLINS J. REYNOLDS, IV, CARLA M. LUKE, EARL GAMBLE, KRISTIN MARSIGLIA, JIM SANDOZ and STEPHANIE KLEEHAMMER made the misrepresentations and/or actively concealed this information with the intention and specific desire that the Plaintiffs and the consuming public would rely on such in selecting the drug(s) as treatment for diabetes.

84.    Defendants Warner-Lambert, Parke Davis, Pfizer, Inc., YVETTE AUCOIN, COLLINS J. REYNOLDS, IV, Marvel, CARLA M. LUKE, EARL GAMBLE, KRISTIN MARSIGLIA, JIM SANDOZ and STEPHANIE KLEEHAMMER negligently concealed material, adverse information regarding the safety and effectiveness of its product.

85.    Defendants Warner-Lambert, Parke Davis, Pfizer, Inc., YVETTE AUCOIN, COLLINS J. REYNOLDS, IV, Marvel, CARLA M. LUKE, EARL GAMBLE, KRISTIN MARSIGLIA, JIM SANDOZ and STEPHANIE KLEEHAMMER made these misrepresentations and actively concealed adverse information at a time when the Defendants knew, or should have known, that their drug product had defects, dangers, and characteristics that were other than what these Defendants had represented to the FDA and the consuming public, including the Plaintiffs herein. Specifically, the Defendants Warner-Lambert, Parke Davis, Pfizer, Inc., YVETTE AUCOIN, COLLINS J. REYNOLDS, IV, Marvel, CARLA M. LUKE, EARL GAMBLE, KRISTIN MARSIGLIA, JIM SANDOZ and STEPHANIE KLEEHAMMER misrepresented to and/or actively concealed from Plaintiffs, the FDA, the consuming public and their prescribing physicians that:

1.    There had been insufficient studies regarding the safety and

efficacy of the drug;

2.  Despite knowing that there had been insufficient or inadequate testing of the drug, Defendants marketed, promoted and/or sold the drug as if they were fully and adequately tested;

3.  Failed to advise Plaintiffs and others that prior studies, research, reports and/or testing had been conducted linking the use of the drug to serious adverse reactions, including, but not limited to, liver toxicity.

4.  Misrepresented and/or actively concealed the fact that Defendants knew, or should have known of reports of liver damage associated with the use of the drug;

5.  Misrepresented and/or actively concealed the fact that Defendants knew, or should have known, of the greatly increased risk of developing liver damage; yet despite this these Defendants were downplaying the risk of the drug;

6.  The misrepresentations of and/or active concealment by the Defendants were perpetuated directly and/or indirectly by Defendants, their sales representatives, employees, distributors, agents and/or detail persons.

7.  The misrepresentations of and/or active concealment by the Defendants constitutes a continuing tort.

86.  Through Manufacturing Defendants' product insert(s), the Defendants Warner-Lambert, Parke Davis, Pfizer, YVETTE AUCOIN, COLLINS J. REYNOLDS, IV, Marvel, CARLA M. LUKE, EARL GAMBLE, KRISTIN MARSIGLIA, JIM SANDOZ and STEPHANIE KLEEHAMMER continued to misrepresent the potential risks and complications associated with the drug.

87.     Defendants Warner-Lambert, Parke Davis, Pfizer, Inc., YVETTE AUCOIN, COLLINS J. REYNOLDS, IV, Marvel, CARLA M. LUKE, EARL GAMBLE, KRISTIN MARSIGLIA, JIM SANDOZ and STEPHANIE KLEEHAMMER had a post-sale duty to warn Plaintiffs about the potential risks and complications associated with the drug in a timely manner.

88.     Defendants Warner-Lambert, Parke Davis, Pfizer, Inc., YVETTE AUCOIN, COLLINS J. REYNOLDS, IV, Marvel, CARLA M. LUKE, EARL GAMBLE, KRISTIN MARSIGLIA, JIM SANDOZ and STEPHANIE KLEEHAMMER misrepresented the safety and efficacy of the drug product in its labeling, advertising, product inserts, promotional materials, or other marketing efforts.

89.     Plaintiffs justifiably relied on and/or was induced by the misrepresentations and/or active concealment of Defendants Warner-Lambert, Parke Davis, Pfizer, Inc., YVETTE AUCOIN, COLLINS J. REYNOLDS, IV, Marvel, CARLA M. LUKE, EARL GAMBLE, KRISTIN MARSIGLIA, JIM SANDOZ and STEPHANIE KLEEHAMMER to their detriment.

90.     By way of further example, not limitation, specific misrepresentations and active concealment include the following facts which were never disclosed to the Plaintiffs or to the general public:

1.      On or about 10/9/96, Dr. John I. Gueriguian, FDA medical officer, warned of potential to harm liver and heart and recommended rejection of Rezulin (troglitazone);

2.      On or about 10/18/96, Dr. Robert I. Misbin, FDA medical officer, wrote of his concerns regarding cardiac toxicity harm from Rezulin (troglitazone);

3.      On or about 11/96, Dr. Gueriguian was stripped of further involvement with review of Rezulin (troglitazone) by FDA senior officials for unsavory comments to Warner-Lambert executive;

4.   On or about 11/3/97, Warner-Lambert reported 35 cases of liver problems and recommended Liver Function Tests (LFT) on commencement of the drug, then monthly for 1-2 months, then every 3 months to the end of the first year of therapy, then periodically;

5.   On or about 12/1/97, 150 reports were received by the FDA of adverse events associated with the drug, including 3 deaths;

6.   On or about 12/97, Glaxo Wellcome withdrew Romozin (Troglitazone) from market in Britain for safety reasons;

7.   On or about 5/17/98, NIH study participant, Audrey LaRue Jones, died from Rezulin (troglitazone) induced liver failure;

8.   On or about 7/28/98, revised warnings were issued: Patients with ALT (alanine transaminase) levels of 1.5 times the norm should not receive Rezulin (troglitazone). ALT levels should be checked at the start of therapy, then every month for 8 months, then every other month to end of first year, then periodically. ALT 1.5-2.0 times norm after starting Rezulin (troglitazone) should have ALT checked every week until it returns to normal or until it reaches 3 times the norm, at which point Rezulin (troglitazone) should be discontinued.  If no response to 600 mg, then Rezulin (troglitazone) should be discontinued;

9.   On or about 3/99, Britain refused to allow re-introduction of Rezulin (troglitazone);

10.  On 3/26/99, Dr. David J. Graham, FDA top specialist in epidemiology, reports 1 of every 1800 patients could be expected to develop liver failure, most of whom will die or undergo organ transplants. Patients are 1200 times as likely to suffer liver failure by going on Rezulin (troglitazone) than by staying off of Rezulin

(troglitazone).  He estimated 430 cases of acute liver failure. Graham concluded 75% fell sick too fast for monthly    monitoring to work.  He also concluded that Rezulin (troglitazone) can so quickly shock the liver that a person whose test results were normal at the beginning of the month could be in mortal jeopardy a week or so later.  Graham said, "[Rezulin (troglitazone)] looks very different than most other drugs."

11.    On or about 3/21/2000, Warner-Lambert and FDA discontinue the sale of Rezulin (troglitazone) and recommend that patients taking Rezulin (troglitazone) NOT discontinue use, but rather, consult with their physicians as soon as possible.

91.    As a direct and legal result of the  misrepresentations of Defendants Warner-Lambert, Parke Davis, and Pfizer, the Plaintiffs have sustained serious and permanent injuries including, but not limited to, injuries to the liver and other physical injuries, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, and loss of the ability to earn money in the future.

92.    All damages sustained herein exceed the jurisdictional amount required for trial by jury and plaintiffs hereby demand trial by jury in this action.

WHEREFORE, petitioners respectfully pray that defendants be cited and served with a copy of this Petition, and, after due proceedings are had, there be judgment rendered in their favor and against the Defendants, *WARNER-LAMBERT COMPANY, PARKE-DAVIS, PFIZER, INC., YVETTE AUCOIN, COLLINS J. REYNOLDS, IV, CARLA M. LUKE, EARL GAMBLE, KRISTIN MARSIGLIA, JIM SANDOZ, STEPHANIE KLEEHAMMER, WALGREEN LOUISIANA COMPANY, INC., RITE AID PHARMACY, MAJORIA DRUGS and RAGUSA SUPERMARKET, INC.,* individually, jointly, severally and *in solido*, for such damages as are reasonable under the circumstances, plus legal interest

from the date of judicial demand until paid, all costs of these proceedings, and all other damages that are equitable and general relief as is warranted under Louisiana law.

Respectfully submitted,

*Deborah M Sulzer*

**WENDELL H. GAUTHIER (Bar #5984)**
**DEBORAH M. SULZER (Bar #19806)**
GAUTHIER, DOWNING,
LABARRE, BEISER & DEAN
3500 N. HULLEN ST.
METAIRIE, LA. 70002
(504) 456-8600

A TRUE COPY OF THE ORIGINAL
ON FILE IN THIS OFFICE
_____
DEPUTY CLERK
24TH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON.

*PLEASE SERVE:*

*Warner-Lambert Company, through its registered agent, CT Corporation System, 8550 United Plaza Boulevard, Baton Rouge, Louisiana 70809.*

*Parke, Davis & Company, through its registered agent, CT Corporation System, 601 Poydras Street, New Orleans, Louisiana 70130.*

*Pfizer, Inc., through its registered agent, CT Corporation System, 8550 United Plaza Boulevard, Baton Rouge, Louisiana 70809.*

*YVETTE AUCOIN. This Defendant may be served at her address as follows: Yvette Aucoin, 1800 Newbury Court, Harvey, Louisiana 70058.*

*COLLINS J. REYNOLDS, IV.  This Defendant may be served at his address as follows: Collins J. Reynolds, Iv, 816 Joe Yenni Blvd., Kenner, Louisiana 70065 and 49 Echezeaux Drive, Kenner, Louisiana 70065.*

*CARLA M. LUKE.  This Defendant may be served at her address as follows: Carla M. Luke, 1044 Lake Avenue, Apt. B, Metairie, Louisiana 70005.*

*EARL GAMBLE.  This Defendant may be served at his address as follows: Earl Gamble, 5444 Sutton Place, New Orleans, Louisiana 70131.*

*KRISTIN K. MARSIGLIA.  This Defendant may be served at her address as follows: Kristin Marsiglia, 3729 Nashville Avenue, New Orleans, Louisiana 70125.*

JIM J. SANDOZ.  *This Defendant may be served at his address as follows*: *Jim J. Sandoz, 4821 Major Drive, New Orleans, Louisiana 70128.*

STEPHANIE KLEEHAMMER.  *This Defendant may be served at her address as follows: Stephanie Kleehammer, 1214 Calhoun, New Orleans, Louisiana 70118 and 26 W. Woodlawn Drive, Destrehan, Louisiana 70047.*

*Walgreen Louisiana Company, Inc., and through its registered agent, Prentice Hall Corporation Systems, Inc., 701 South Peter Street, 2nd Floor, New Orleans, Louisiana 70130.*

*RITEAID PHARMACY, (Rite Aid Pharmacy) formerly known as K&B Drug, Inc., through its registered agent, CT Corporation System, 8550 United Plaza Boulevard, Baton Rouge, Louisiana 70805.*

*MAJORIA DRUGS, through its registered agent, Anthony S. Majoria, 7 Lakeway Court, New Orleans, Louisiana 70131.*

*RAGUSA SUPERMARKET, INC., through its registered agent, Larry C. Pieno, 4007 Westbank Expressway, Marrero, Louisiana 70072 and Carl J. Burreri, 2608 Crestwood Road, Marrero, Louisiana 70072.*

EXHIBIT

B

JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

JUN -9 2000

FILED
CLERK'S OFFICE

## DOCKET NO. 1348

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

## IN RE REZULIN PRODUCTS LIABILITY LITIGATION

## BEFORE JOHN F. NANGLE, CHAIRMAN, WILLIAM B. ENRIGHT, CLARENCE A. BRIMMER, JOHN F. GRADY, BAREFOOT SANDERS, LOUIS C. BECHTLE AND JOHN F. KEENAN, JUDGES OF THE PANEL

### TRANSFER ORDER

This litigation presently consists of nineteen actions pending in the following federal districts: six actions in the Central District of California; two actions in the Southern District of Ohio; and one action each in the Northern District of Alabama, District of the District of Columbia, Northern District of Iowa, Southern District of Iowa, Eastern District of Louisiana, District of Massachusetts, District of New Jersey, Northern District of Ohio, Eastern District of Pennsylvania, Western District of Pennsylvania, and District of South Carolina.[1] Before the Panel are the following two motions: plaintiff in a Central California action seeks centralization of actions in this litigation, pursuant to 28 U.S.C. §1407, in either that district or the Southern District of Ohio; and plaintiffs in the Northern District of Ohio and Northern District of Alabama actions seek centralization in either of those two districts. Most responding plaintiffs support centralization, although they disagree regarding the most appropriate transferee district for this litigation. Defendant Warner-Lambert & Co. (Warner-Lambert) and plaintiffs in three tag-along actions oppose Section 1407 centralization. If the Panel deems centralization appropriate, Warner-Lambert suggests the Eastern District of Michigan as transferee district. In addition to these five suggested transferee

---

[1] Five of the Central California actions, one of the Southern District of Ohio actions, and the District of Columbia, Northern District of Iowa, Southern District of Iowa, Eastern District of Louisiana, District of Massachusetts, Eastern District of Pennsylvania, Western District of Pennsylvania and District of South Carolina actions were not included in the Section 1407 motions in this docket, but are now included in our transfer order, because all parties to these actions have stated in writing their respective positions and had the opportunity to present oral argument at the Panel's May 19, 2000, hearing in this matter.

The Panel has also been notified that 29 additional potentially related actions are pending as follows: nine actions in the Southern District of Mississippi; four actions in the District of New Jersey; two actions each in the Northern District of Alabama and Central District of California; and one action each in the District of Idaho, District of Kansas, Middle District of Louisiana, District of Massachusetts, Eastern District of Michigan, Western District of Missouri, Northern District of Mississippi, Eastern District of New York, Southern District of New York, Northern District of Ohio, District of Puerto Rico, and Northern District of Texas. These actions and any other related actions will be treated as potential tag-along actions. *See* Rules 7.4 and 7.5, R.P.J.P.M.L., 181 F.R.D. 1, 10-11 (1998).

- 2 -

districts, seven others have been proposed by various plaintiffs, usually in the district where each plaintiff filed an action.

On the basis of the papers filed and the hearing held, the Panel finds that the actions in this litigation involve common questions of fact and that centralization under Section 1407 in the Southern District of New York will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. Common factual questions arise because all actions focus on alleged adverse effects of Rezulin, a drug used to treat type 2 diabetes, and the conduct of defendant Warner-Lambert (and its subsidiary Parke-Davis Corp.) concerning Rezulin's manufacture, testing and marketing. Earlier this year, Warner-Lambert withdrew Rezulin from the market because the Food and Drug Administration concluded that Rezulin posed too high a risk of severe liver toxicity. In addition, many of the actions are brought on behalf of purported nationwide classes of Rezulin users. Centralization under Section 1407 is thus necessary in order to avoid duplication of discovery, prevent inconsistent or repetitive pretrial rulings (such as those regarding class certification), and conserve the resources of the parties, their counsel and the judiciary.

Warner-Lambert acknowledged during oral argument before the Panel that Section 1407 coordination would produce efficiencies. Nevertheless, Warner-Lambert worries about the potential filing of relatively weak claims. We commend Warner-Lambert's acknowledgment of the practical benefits of Section 1407 transfer. We are confident, however, that the transferee judge can streamline the entire pretrial proceedings, while concomitantly directing the appropriate resolution of all claims.

Opponents of transfer argue that the presence of individual questions of fact militate against 1407 transfer. We are unpersuaded by this argument. Indeed, we point out that transfer under Section 1407 has the salutary effect of placing all actions in this docket before a single judge who can formulate a pretrial program that: 1) allows pretrial proceedings with respect to any non-common issues to proceed concurrently with pretrial proceedings on common issues, *In re Multi-Piece Rim Products Liability Litigation*, 464 F.Supp. 969, 974 (J.P.M.L. 1979); and 2) ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties. It may be, on further refinement of the issues and close scrutiny by the transferee judge, that some claims or actions can be remanded to their transferor districts for trial in advance of the other actions in the transferee district. But we are unwilling, on the basis of the record before us, to make such a determination at this time. Should the transferee judge deem remand of any claims or actions appropriate, procedures are available whereby this may be accomplished with a minimum of delay. *See* Rule 7.6, R.P.J.P.M.L., 181 F.R.D. 1, 11-13 (1998).

Given the geographic dispersal of constituent actions and potential tag-along actions, no district stands out as the geographic focal point for this nationwide docket. Thus we have searched for a transferee judge with the time and experience to steer this complex litigation on prudent course. By centralizing this litigation in the Southern District of New York before Judge Kevin Thomas Duffy, an experienced transferee judge for multidistrict litigation, we are assigning this litigation to a seasoned jurist with a low caseload.

IT IS THEREFORE ORDERED that pursuant to 28 U.S.C. §1407, the actions listed on the

- 3 -

attached Schedule A be, and the same hereby are, transferred to the Southern District of New York and, with the consent of that court, assigned to the Honorable Kevin Thomas Duffy for coordinated or consolidated pretrial proceedings.

FOR THE PANEL:

John F. Nangle
Chairman

# SCHEDULE A

## MDL-1348 — In re Rezulin Products Liability Litigation

### Northern District of Alabama

*Mary Ann Jones v. Warner-Lambert Co.*, C.A. No. 1:00-798

### Central District of California

*Virginia Venegas v. Warner-Lambert Co., et al.*, C.A. No. 2:00-590
*Janet Smith v. Warner-Lambert Co., et al.*, C.A. No. 2:00-3437
*Milbergo Reyes v. Warner-Lambert Co., et al.*, C.A. No. 2:00-4185
*Edith Aroner v. Warner-Lambert Co., et al.*, C.A. No. 2:00-4186
*Lucila Iriego v. Warner-Lambert Co., et al.*, C.A. No. 2:00-4678
*Amparo Magdalena v. Warner Lambert Co., et al.*, C.A. No. 2:00-4957

### District of District of Columbia

*Patricia Julien-St. Clair v. Warner-Lambert Co., et al.*, C.A. No. 1:00-839

### Northern District of Iowa

*Robert Lawrence Poster, et al., v. Warner-Lambert Co., et al.*, C.A. No. 1:00-65

### Southern District of Iowa

*Jerry Dean Houk, et al. v. Warner-Lambert Co., et al.*, C.A. No. 4:00-70205

### Eastern District of Louisiana

*Joann Waskon, et al. v. Warner-Lambert Co., et al.*, C.A. No. 2:00-1050

### District of Massachusetts

*David C. Ashe, et al. v. Warner-Lambert Co., et al.*, C.A. No. 1:00-10753

### District of New Jersey

*Marilyn Appel v. Warner-Lambert Co., et al.*, C.A. No. 2:00-1498

### Northern District of Ohio

*Logan S. Huston, Sr., et al. v. Warner-Lambert Co., et al.*, C.A. No. 1:00-856

### Southern District of Ohio

*Dianna Barnett, et al. v. Warner-Lambert Co., et al.*, C.A. No. 1:00-192
*Alan Weisman v. Warner-Lambert Co.*, C.A. No. 1:00-321

**MDL-1348 Schedule A (Continued)**

### Eastern District of Pennsylvania

*Sanford Pinsker v. Warner-Lambert Co., et al.*, C.A. No. 2:00-2046

### Western District of Pennsylvania

*Joel Catanzaro, et al. v. Warner-Lambert Co., et al.*, C.A. No. 2:00-504

### District of South Carolina

*John R. Darby, et al. v. Parke-Davis, et al.*, C.A. No. 8:00-1348